IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**MARRIE WESTROPE and REGGIE KELLY, individually and on behalf of all others similarly situated,**

Plaintiffs,

v.

**RINGLER ASSOCIATES INCORPORATED, PAUL HOFFMAN, and Does 1-100**,

Defendants.

No. 3:14-cv-00604-ST

OPINION AND ORDER

**MOSMAN, J.**,

One June 26, 2014, Defendants filed a Motion to Dismiss [17] arguing that Plaintiffs had failed to state a negligence claim, a violation of ORS 746.310, and a violation of AK Stat. § 21.33.037. On December 5, 2014, Judge Stewart issued her Findings and Recommendation ("F&R") [82] recommending that Defendants' motion be granted as to Defendants' alleged continuing duty to inform plaintiffs that their coverage may be threatened, but otherwise denied.

## LEGAL STANDARD

The magistrate judge makes only recommendations to the court, to which any party may file written objections. The court is not bound by the recommendations of the magistrate judge, but retains responsibility for making the final determination. The court is generally required to make a de novo determination regarding those portions of the report or specified findings or recommendation as to which an objection is made. 28 U.S.C. § 636(b)(1)(C). However, the court is not required to review, de novo or under any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the F&R to which no objections are addressed. *See*

*Thomas v. Arn*, 474 U.S. 140, 149 (1985); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). While the level of scrutiny under which I am required to review the F&R depends on whether or not objections have been filed, in either case, I am free to accept, reject, or modify any part of the F&R. 28 U.S.C. § 636(b)(1)(C).

**BACKGROUND**

In 1983, Plaintiff Kelly, of Alaska, suffered severe injuries from a motorcycle accident. Mr. Kelly filed a personal-injury lawsuit in California, and the case was resolved with a "qualified assignment" structured settlement brokered by Defendants. Compl. [1] at ¶¶ 5, 17, 20. In 1979, when Plaintiff Westrope, of Oregon, was six-years old, she was severely burned over most of her body, disfiguring her and impairing her ability to lead a normal life. *Id.* at ¶ 18; Compl. [1] Ex. B. Ms. Westrope filed a lawsuit in Oregon ("Westrope Litigation") and the case was resolved with a qualified-assignment structured settlement brokered by Defendants. Compl. [1] at ¶¶ 5, 18, 20.

Structured settlements are designed to benefit both parties in an injury claim. *Id.* at ¶ 23. The defendant can spread out payments over a long period of time and can take a one-time exclusion from income and deduct the cost of the annuity contract funding the settlement as a business expense. *Id.* The injured party receives spendthrift protection and guaranteed, tax-free income over an extended period of time. *Id.*

In a "qualified assignment" structured settlement, the settling defendant or its insurer does not wish to retain the long-term periodic payment obligation on its books. *Id.* at ¶ 26. The defendant or its insurer can transfer its obligation to a third party through a qualified assignment. *Id.* The third party, called an "assignment company" or "qualified assignee," becomes the owner of the annuity that funds the periodic payments due under the settlement agreement. *Id.* Under a

qualified assignment, the settling defendant or its insurer has no further liability to make periodic payments once it funds the annuity and makes the assignment. *Id.* Accordingly, the solvency of the life-insurance company issuing the annuity is critical. *Id.*

Ringler is a primary-market structured-settlement broker and brokered Plaintiffs' structured-settlement agreements. *Id.* at ¶¶ 1, 2. In order to discharge their responsibility as structured-settlement annuity brokers, Defendants perform multiple functions. One is to calculate the injured party's future financial needs and medical costs in order to establish the amount of annuity payments needed over the life of the agreement. *Id.* at ¶ 3. Another function is to select and procure annuities from healthy life-insurance companies that can fulfill the goals of a structured settlement. *Id.* The SSA broker then facilitates the annuity payout schedule. *Id.*

Defendants obtained information from Plaintiffs and completed and submitted an "Application for An Immediate Annuity" to the Executive Life Insurance Company of New York ("ELNY") on behalf of Plaintiffs. *Id.* at ¶ 20; Compl. [1] Exs. A at 2, B at 2. The applications list the lump-sum and monthly annuity payments that ELNY would be obligated to pay to Plaintiffs, provide a payment schedule, list the Oregon and Alaska addresses where Plaintiffs lived and where payments were to be sent, name Plaintiffs as "annuitants" and "payees," and contain the signature and address of Paul Hoffman of Ringler Associates as "soliciting agent" and "agent." *Id.* Defendants received from ELNY an undisclosed commission of 4% of each annuity purchased—payable in full, up front, before Plaintiffs began receiving their periodic payments. Compl. [1] at ¶ 5.

Defendants selected ELNY to fund Plaintiffs' structured-settlement annuities and selected ELNY's parent, the First Executive Corporation ("FEC"), as the assignment company despite risks which Plaintiffs allege ELNY and FEC knew or should have known. *Id.* at ¶¶ 5–12,

29–37, 38, 42–50. ELNY was one of several life-insurance companies offering SSAs at the time Defendants brokered Plaintiffs' SSAs. *Id.* at ¶ 53. Plaintiffs allege that there were warning signs indicating that ELNY was in financial trouble at the time Defendants placed Plaintiffs with ELNY. *Id.* at ¶¶ 5–11, 29–32, 50. Plaintiffs allege that ELNY was over-exposed to junk bonds, managed a significantly riskier asset pool than other competing annuity sellers, was not licensed in Plaintiffs' home states, and faced an increased risk of defaulting on its SSA payment obligations. *Id.* at ¶¶ 29, 44, 50. By the early 1990s, FEC declared bankruptcy, and ELNY was placed into receivership under the direction of the New York Liquidation Bureau ("NYLB"). *Id.* at ¶ 32. On April 16, 2012, the New York Supreme Court declared ELNY insolvent and approved a liquidation plan presented by the New York State Superintendent of Financial Services. *Id.* at ¶ 37. ELNY's liquidation plan cut over $920 million of payments owed to approximately 1,500 payees nationwide. *Id.* Ms. Westrope's and Mr. Kelly's benefits have been reduced by 52% and 50%, respectively. *Id.* at ¶ 69.

## DISCUSSION

### I. <u>Negligence Claim</u>

Plaintiffs alleged that Defendants, as insurance brokers, owed them a duty to exercise reasonable care when procuring "qualified assignment" annuity contracts from life insurance companies to fund their SSAs, and also owed them a duty to inform them that their coverage may be threatened due to ELNY's financial condition. Compl. [1] at ¶ 67. Judge Stewart determined that Defendants did not have a duty to inform Plaintiffs that their coverage may be threatened due to ELNY's financial condition. F&R [82] at 25. Neither party objected to this conclusion. Judge Stewart also concluded that Plaintiffs had sufficiently pled that Defendants owed them a duty to exercise reasonable care in selecting an appropriate annuity based on the

fact that Plaintiffs were potentially third-party beneficiaries to the annuity contracts. *Id.* Defendants object to this conclusion.

The heart of Defendants objection is that Plaintiffs have not and cannot plead that Defendants owed them a legal duty of care. Defendants argue they were hired by the settling torfeasors—a party whose interests were adverse to Plaintiffs—and therefore Defendants could not owe both a duty of care to the settling tortfeasors and to Plaintiffs. Defs.' Objections [88] at 8. In addition, Defendants argue that they did not owe a duty of care to Plaintiffs because Plaintiffs were not a party or beneficiary of any verbal or written agreement between Defendants and the settling tortfeasors, or between Defendants and the annuity owner (FEC) or the annuity issuer (ELNY). *Id.* at 9. Finally, Defendants argue that Judge Stewart erred in her third-party beneficiary analysis. *Id.* Under both Oregon and Alaska law only intended third-party beneficiaries have enforceable rights; incidental beneficiaries have no rights. *Id.* Defendants argue that Plaintiffs are mere incidental beneficiaries to the annuity contracts. *Id.*

I disagree that Plaintiffs are unable to state a claim for negligence under both Alaska and Oregon law. Under Alaska law, Plaintiffs may sue under a tort theory to recover purely economic losses. *See Mattingly v. Sheldon Jackson Coll.*, 743 P.2d 356, 360–61 (Alaska 1987). However, Plaintiffs are still required to demonstrate that Defendants owed them a legal duty of care. *See U.S. v. N. Star Terminal & Stevedore Co.*, 445 F. Supp. 2d 1063, 1075 (D. Alaska 2006). Under Oregon law, in order to state a claim for negligence for purely economic loss, Plaintiffs must show "some source of duty outside the common law of negligence, such as a special relationship or status that imposed a duty on the defendant beyond the common-law negligence standard." *Harris v. Suniga*, 344 Or. 301, 308 (Or. 2008) (citations and internal quotations omitted). "The common thread in the special relationships that the [Oregon] Supreme

Court has recognized as giving rise to a duty of care to protect against purely economic loss is that the professional is acting, at least in part, to further the economic interests of the person to whom the duty is owed." *Meininger v. Henris Roofing & Supply of Klamath Cnty., Inc.*, 137 Or. App. 451, 454 (1995) (citation omitted).

I agree with Judge Stewart's analysis in the F&R; Defendants owed Plaintiffs a legal duty of care as third-party beneficiaries of the contracts between Defendants and the settling tortfeasors, ELNY, and FEC. Defendants concede in their brief that plaintiffs who are intended beneficiaries of a contract have enforceable rights. Defs.' Objections [88] at 9. Defendants also correctly state that the intent of the parties to the contract determines whether an intended third-party exists. *Id.* at 10. Defendants believe that the terms of the contracts at issue are clear, and therefore "the intent of the parties must be ascertained from the contract itself." *Infinity Air, Inc. v. Echo Global Logistics, Inc.*, No. 3:13-CV-00307-MO, 2013 WL 3199657, at *4 (D. Or. June 20, 2103) (quoting *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999)). I disagree that the contractual terms are clear. In the application for the annuities as issue, Defendant Hoffman is listed as the soliciting agent. Exhibit A [13] at 3; Exhbit B [14] at 3. It is not at all clear from that application or the other contracts, whether Defendant Hoffman was acting solely as the agent for FEC, or if he was acting as the agent for both. Therefore, the question of the parties' intent cannot be determined on the face of the contracts, but rather is a question of fact that cannot be decided at the motion to dismiss stage.

Oregon courts have found defendants in similar situations to Defendants in this case to be agents working in part for the economic benefit of an intended third-party beneficiary, and therefore have found the defendants owe a duty of care to that beneficiary. In Oregon, this duty has been owed to homebuyers by a home inspector hired by the seller's realtor (*Meininger*, 137

Or. App. at 454), to intended devisees by the attorney hired by the testator to draft the will (*Hale v. Groce*, 304 Or. 281, 287 (1987)), and to employees by the company hired by the employer to conduct drug testing of the workforce (*Ishikawa v. Delta Air Lines, Inc.*, 149 F. Supp. 2d 1246, 1250 (D. Or. 2001) (applying Oregon law)). I believe *Meininger* is particularly instructive. In *Meininger* the court held that home buyers could sue a roof inspector retained by the home's seller. *Meininger*, 137 Or. App. at 454–55. The roof inspector argued that because the seller was engaged in an arm's length, adversarial negotiation with the buyers, it could not owe a duty to the buyers. *Id.* at 455. The court, however, rejected this argument, noting that, because "plaintiffs were not in an arms-length negotiation with *defendant*," and because there was no "adversarial relationship between plaintiffs and defendant," the inspector owed a duty of care to the plaintiffs. *Id.* (emphasis in original). The relationship between Plaintiffs and Defendants in this case is nearly identical. Therefore, I believe Plaintiffs can state a plausible claim against Defendants. Plaintiffs can plausibly plead that Defendants were at least acting in part to further Plaintiffs' economic interests, and therefore a duty existed. *Id.* at 454.

Defendants argue that *Meininger* and the other cases cited by Plaintiffs are inapposite to the present case. Defs.' Objections [88] at 13. Defendants distinguish those cases by saying that the defendants in each of those cases were found to have negligently provided false information. *Id.* These distinctions, however, go to whether or not a duty was breached, and not whether a duty of care exists.

Defendants' profession is dedicated to purchasing annuities that are intended to benefit accident victims. Defendants knew that the annuity it was procuring in this case would provide insurance intended to benefit Plaintiffs with secure annuity payments for life. As such, Plaintiffs can plausibly claim to have been third-party beneficiaries to all of Defendants' interactions,

agreements, and contracts with the underlying tortfeasors, FEC, and ELNY. As such, Plaintiffs have stated a plausible claim for negligence under both Oregon and Alaska law. Defendants' motion to dismiss the Plaintiffs' negligence claims is denied.

## II. <u>Statutory Claims</u>

Judge Stewart determined that Ms. Westrope and Mr. Kelly had sufficiently pled violations of ORS 746.310 and AK Stat. § 21.33.037, respectively. F&R [82] at 25. Defendants objected to this portion of the F&R, arguing that Ms. Westrope's claim under ORS 746.310, and Mr. Kelly's claim under AK Stat. § 21.33.037 fall outside the scopes of those statutory provisions. Defs.' Objections [88] at 14, 16.

### A. *Ms. Westrope's Claim Under ORS 746.310*

ORS 746.310 states in relevant part: "No person shall in this state directly or indirectly with respect to domestic risks act as insurance producer for or otherwise transact insurance for any insurer not then authorized to transact such insurance in this state." Defendants argue they did nothing "in this state" (Oregon) that could bring them within the scope of this statute because they are not located in Oregon, they did not act as an agent for any Oregon parties, and they had no contact with Ms. Westrope in Oregon. Defs. Objections [88] at 16–17.

Plaintiffs argue that Defendants at least indirectly helped facilitated a transaction of insurance in Oregon with respect to domestic risks by an insurer not then authorized to transact insurance in Oregon. Pls.' Resp. [92] at 27. Plaintiffs argue that Judge Stewart was correct in concluding that the insurance at issue respects domestic risks, as defined in ORS 731.086, "because it names an Oregon resident as the payee and required lifetime annuity payments to be paid in Oregon." *Id.* at 26 (quoting F&R [82] at 21–22) (internal citations omitted). Plaintiffs also argue that Judge Stewart was correct in concluding that "[t]he words 'directly or indirectly

with respect to domestic risks' are sufficiently broad to encompass activities by a person acting outside Oregon to assist an unauthorized insurer in selling an annuity to an Oregon resident that names an out-of-state straw corporation as the owner of the annuity for tax purposes." *Id.* (quoting F&R [82] at 22) (internal citations omitted).

Neither party cited any Oregon case law to aid in the interpretation of this statute, nor have I been able to locate any. Looking at the plain meaning of the terms in the statute, I agree with Judge Stewart's conclusion that "[a]bsent any contrary authority, at this juncture, the allegations in the Complaint are sufficient to state a claim . . . for violating ORS 746.310." F&R [82] at 22. Defendants arguments focus on formalistic distinctions that I find unpersuasive given the text of the statute. Defendants argue that they were hired by the settling tortfeasors who were not from or in Oregon, and they brokered a deal for an annuity to be sold by ELNY to FEC, neither of whom were from or in Oregon. Defs.' Objections [88] at 17. Defendants essentially argue they had no contractual relationship or other contact with Plaintiff, and therefore cannot be deemed to have engaged in an insurance transaction in Oregon. *Id.* However, the fact that the annuity was not sold directly to Ms. Westrope does not *ipso facto* win the day for Defendants. ORS 746.310 prohibits not only direct transactions, but indirect transactions as well. I believe that Defendants' actions could constitute an indirect insurance transaction for the following reasons: (1) Ms. Westrope's name was listed on the annuity application as the annuitant; (2) at all times, Defendants, ELNY, and FEC knew that the annuity would be used solely for Ms. Westrope's benefit; and (3) although FEC was listed as the legal owner of the annuity, it had no power to divert the payment streams to another payee or for another purpose. Although not a direct sale, I believe this could classify as an indirect insurance transaction by an "insurer not then authorized to transact such insurance in [Oregon]." ORS 746.310. I therefore adopt this

portion of the F&R as my own. Defendants' motion to dismiss Plaintiff's claim of a violation of ORS 746.310 is DENIED.

**B. *Mr. Kelly's Claim Under AK Stat. § 21.33.037***

AK Stat. § 21.33.037 states in relevant part: "A person may not directly or indirectly act as agent for, or otherwise represent, assist, or aid on behalf of another, a nonadmitted insurer in the transaction of insurance in this state." AK Stat. § 21.33.037(a). Unlike the Oregon statute, Alaska's prohibition comes with an exception. The prohibition does not apply to "life insurance, health insurance, and annuity contracts when solicited solely by mail or when not solicited, negotiated, or procured in this state." AK Stat. § 21.33.037(b)(6).

Judge Stewart concluded, and Plaintiffs agree, that the exception is an affirmative defense. F&R [82] at 23. This was significant because "[f]or a complaint to be dismissed because of an affirmative defense, the defense clearly must appear on the face of the pleading." F&R [82] at 23–24 (quoting *McCalden v. Cal. Library Ass'n*, 955 F.2d 1214, 1219 (9th Cir. 1990)). Judge Stewart concluded that the affirmative defense did not clearly appear on the case of the pleading because the Complaint never alleges that the annuity was solicited solely by mail, nor does it allege that the annuity was not solicited, negotiated, or procured in Alaska. *Id.*

Judge Stewart also argues that if the exception is not considered an affirmative defense, it is still not clear that it applies. *Id.* Judge Stewart focuses on the definition of "procure." According to the dictionary cited by Judge Stewart, procure means: (1) to get possession of: obtain by particulare care and effort; and (2) to bring about. *Id.* at 24 (quoting WEBSTER'S THIRD NEW INT'L DICTIONARY 1809 (1971)). Judge Stewart argues that absent any guidance from the Alaskan courts or legislature as to the intended meaning of "in this state" and "procured," it is

not clear that out-of-state actions that "bring about" the effectuation of insurance in Alaska are covered by the exemption. F&R [82] at 24.

Defendants object to the F&R, arguing the exception is not an affirmative defense, but rather defines the scope of the statute. Defs.' Objections [88] at 15. Defendants argue that because the exception defines the scope of the statute, Plaintiffs are required to allege facts in the complaint showing that this statute does in fact apply to this transaction (i.e. that the annuity was solicited, negotiated, or transacted in Alaska). *Id.*

I agree with Plaintiffs and Judge Stewart that the exception is in the nature of an affirmative defense. Black's Law Dictionary defines an affirmative defense as: "A defendant's assertion of facts and arguments, that if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true." BLACK'S LAW DICTIONARY 509 (10th ed. 2014). AK Stat. § 21.33.910(2) defines "transaction of insurance" as:

> [T]he solicitation, negotiation, procurement, effectuation, or renewal of insurance; forwarding of applications; delivery of policies or contracts; inspection of risks; fixing of rates; investigation or adjustment of claims or losses; collection or forwarding of premiums; or transaction of matters subsequent to effectuation of the contract of insurance and arising out of it.

For the same reasons discussed in the section above on ORS 746.310, in the absence of contrary authority, it is possible that Defendants' out of state actions in this case that resulted in the payment of an insurance contract in Alaska may be sufficient to make Defendants the agents of a nonadmitted insurer aiding it in the transaction of insurance in Alaska—a violation of AK Stat. § 21.33.037. Despite that being true, if Defendants were able to show that they acted exclusively outside of Alaska, and therefore never solicited, negotiated, or procured the annuity within Alaska, the exception would apply and there would be no violation of AK Stat. § 21.33.037. This is the dictionary definition of an affirmative defense.

Because I have determined that the exception functions as an affirmative defense, and because I agree that the defense does not clearly appear on the face of the complaint, I hold that AK Stat. § 21.33.037(b)(6) is not an appropriate grounds for dismissing Plaintiffs' claim for a violation of AK Stat. § 21.33.037. Defendants' motion to dismiss is DENIED.

**CONCLUSION**

For the foregoing reasons, I adopt Judge Stewart's recommendation. Defendants' Motion to Dismiss [17] is GRANTED in part and DENIED in part. Defendants' motion should be GRANTED as to the alleged continuing duty to inform Plaintiffs that their coverage may be threatened due to ELNY's declining financial condition. Defendants' motion should be DENIED in all other respects.

IT IS SO ORDERED.

DATED this __12th__ day of February, 2015.

/s/ Michael W. Mosman____
MICHAEL W. MOSMAN
United States District Judge